UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUSTIN E. LEWIS,

                Plaintiff,

     v.

CRAIG FERGUSON, *et al.*,

                Defendants.

CASE NO. 3:19-cv-05108-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: December 23, 2022

This matter is before the Court on referral from the district court and on defendants' motion for summary judgment. *See* Dkt. 126.

This action arises out of an alleged excessive force incident that occurred while plaintiff was housed at the Kitsap County Jail. Plaintiff alleges that the named defendants, all corrections officers, used excessive force when restraining him in violation of his Eighth and Fourteenth Amendment rights. He also brings state law claims for assault and battery.

Defendants move for summary judgment on all claims. As to plaintiff's Eighth Amendment excessive force claim, defendants argue that they used reasonable force when they

took him down, hit him with closed fists, sprayed OC spray on his face, and applied three taser stuns to his right buttock. However, defendants' argument is based on their version of events. Defendants concede that if the Court accepts plaintiff's declaration setting forth his version of the events then there are triable issues of fact to send this case to a jury. Because the Court must consider plaintiff's declaration, the Court concludes that triable issues of fact exist as to the reasonableness of the use of force.

Defendants also renew their motion for summary judgment on plaintiff's Fourteenth Amendment claim and argue that plaintiff was in custody pursuant to a conviction, so he was only protected by the Eighth Amendment at the time of the incident. Yet, the evidence defendants rely on does not explain the gap between the date plaintiff was sentenced and the date of the incident. The Court cannot conclude that defendants are entitled to summary judgment on this claim based on the evidence submitted.

Finally, defendants seek summary judgment dismissal of plaintiff's state law claims. However, those claims depend on the success of plaintiff's federal claims. Because the Court recommends denial of summary judgment as to the federal claims, the Court recommends the same for the state law claims.

Thus, the Court recommends that defendants' motion for summary judgment be denied.

## BACKGROUND

### I.     Summary of Incident

The following facts are undisputed by the parties unless otherwise noted. On January 19, 2019, defendants conducted a search of Kitsap County Jail's "Central C" unit, where plaintiff was housed. Dkt. 126 at 2. The purpose of the search was to reveal contraband or other

1    prohibited items. *See id.* at 2–3. During the search, corrections officers confiscated plaintiff's

2    bible. *Id.* at 3. Plaintiff protested the removal of his bible and loudly demanded it back. *See id.*

3         In response to plaintiff's loud protest, defendant Ferguson instructed plaintiff to come out

4    of his unit and into the hallway adjacent to the unit. *See id.* at 3–4. Plaintiff followed defendant

5    Ferguson's instruction and walked down some stairs and into the hallway. *See id.* The rest of the

6    incident is captured on surveillance video without audio. *See* Dkt. 148.

7         The parties dispute exactly what happened after plaintiff entered the hallway. For example,

8    they dispute what was said between the parties and whether plaintiff resisted. *See* Dkts. 126 at

9    13–14, 146. The parties do not dispute that, less than a minute after plaintiff entered the hallway,

10   at least six corrections officers took plaintiff down and sprayed him with OC spray in the face, at

11   least one officer hit plaintiff with closed fist strikes, and defendant Ferguson applied his taser in

12   stun drive mode to plaintiff's right buttock three times. *See* Dkt. 126 at 8–9. Plaintiff was

13   eventually placed in a restraint chair and received medical attention. *See* Dkt. 126 at 9.

14   **II.    Procedural History**

15        Plaintiff, initially proceeding *pro se*, commenced this matter in February 2019. Dkt. 1.

16   Plaintiff amended his complaint twice before the Court appointed pro bono counsel on January

17   19, 2021. *See* Dkts. 30, 43, 57. On December 9, 2021, this Court granted plaintiff leave to amend

18   his complaint for a third time. Dkt. 82. In his third amended complaint, plaintiff named Craig

19   Ferguson, Logan Cromwell, Justin Nohrenberg, John Sackman, Samuel Carson, Sascha Siebertz,

20   Jasmine Oliver, and Jordan Campbell as defendants. Dkt. 83 at 2–3. Plaintiff brings 42 U.S.C. §

21   1983 claims for violation of his Eighth and Fourteenth Amendment rights as well as state law

22   claims for assault and battery. *Id.* at 4–5. Plaintiff is seeking damages. *Id.* at 6.

23

24

1    Defendants move for summary judgment on all claims. *See* Dkt. 126. They also renew

2    their motion to exclude plaintiff's expert witness, Gregory Gilbertson. *See* Dkt. 142. Both

3    motions are fully briefed and ripe for review. *See* Dkts. 145, 149, 151, 152.

**DISCUSSION**

**I.    Motion to Exclude Expert Witness**

6    The Court first addresses defendants' motion to exclude plaintiff's expert witness,

7    Gregory Gilbertson. *See* Dkt. 142. The Court previously denied defendants' motion because Mr.

8    Gilbertson had not yet produced a final report with his opinions. *See* Dkts. 79, 104. Now that Mr.

9    Gilbertson has produced his final report, defendants renew their motion to exclude. *See* Dkt. 136,

10   141.

11   Pursuant to Federal Rule of Evidence 702:

12   [a] witness who is qualified as an expert by knowledge, skill, experience, training,
     or education may testify in the form of an opinion or otherwise if: (a) the expert's
13   scientific, technical, or other specialized knowledge will help the trier of fact to
     understand the evidence or to determine a fact in issue; (b) the testimony is based
14   on sufficient facts or data; (c) the testimony is the product of reliable principles and
     methods; and (d) the expert has reliably applied the principles and methods to the
15   facts of the case.

16   Although Rule 702 should be applied with a "liberal thrust" favoring admission, *Daubert v.*

17   *Merrell Down*, 509 U.S. 579, 588 (1993), the rule requires that expert testimony be both relevant

18   and reliable, *see Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "Expert opinion testimony

19   is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it

20   is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of

21   the relevant discipline." *Id.* at 565. Broad discretion is given to the trial court to admit or exclude

22   expert testimony. *See Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996) (internal citations

23   omitted).

24

Mr. Gilbertson prepared a report in which he offered several opinions regarding the use

of force. *See* Dkt. 143 at 5–14. Among other things, Mr. Gilbertson states that plaintiff was calm

leading up to the use of force and that the officers "aggressively converge" on plaintiff and

"inexplicably begin assaulting him." *Id.* at 9. He states that the officers' use of force did not

comply with Kitsap County Sheriff's Office policies. *See id.* at 12–13. Notably, he claims that

even accepting defendants' version of events leading up to the use of force, plaintiff only

exhibited "passive resistance," which does not justify the force used. *Id.* at 11.

According to defendants, Mr. Gilbertson should be excluded because (1) he is not

qualified to opine on "correctional use of force," and (2) his opinions are based on speculation

and conjecture, which makes them unreliable. *Id.* at 1.

### 1. Whether Mr. Gilbertson is Qualified

Defendants argue that Mr. Gilbertson is not qualified to render an opinion on the use of

force in a correctional setting and ask the Court to exclude Mr. Gilbertson's expert report in its

entirety. *See* Dkt. 142 at 4.

Mr. Gilbertson has a B.S. degree in History and an M.S. degree in Justice Administration.

*See* Dkt. 143 at 16. He was a criminal justice professor for 22 years. *See id.* He has worked as an

International Police Trainer and Advisor in Iraq. *See id.* In that role, his task was "to design and

develop the *Policy and Procedures Manual* for the Afghan Police." *Id.* He has extensive

experience as a police officer in Georgia—beginning his career as a police officer for the Atlanta

Police Department and later as a SWAT officer with the La Grange Police Department. *See id.*

Mr. Gilbertson also states he has completed over 1,000 hours of law enforcement and tactical

police training and has served as an expert in excessive force cases. *See id.* at 6. Indeed, a court

in this district has previously found Mr. Gilbertson qualified to render expert opinions in an

1    excessive force case. *See Alvarez v. King Cnty.*, No. C16-0721-RAJ, 2017 WL 3189025, at *8

2    (W.D. Wash. July 27, 2017).

3        The Court disagrees with defendants that Mr. Gilbertson needs to have specific work

4    experience in a correctional facility to be qualified as an expert witness in this action. *See* Dkt.

5    142 at 4. Defendants do not cite to any case in the Ninth Circuit—binding or otherwise—where a

6    court held that an excessive force expert needed to have experience working in a correctional

7    facility to be able to testify regarding the use of force in a correctional facility. To the contrary,

8    courts have held the opposite. *See*, *e.g.*, *Meippen v. Spokane Cnty.*, No. CV-07-220-FVS, 2009

9    WL 10704687, at *4 (E.D. Wash. May 18, 2009) ("There is no reason to think one must have

10   actual experience as a correctional officer in order to qualify as an expert regarding the use of

11   force in a jail."); *Atencio v. Arpaio*, No. CV-12-02376-PHX-PGR, 2015 WL 11117187, at *9–11

12   (D. Ariz. Jan. 15, 2015) (declining to exclude excessive force expert on the basis that he lacked

13   experience working in a correctional facility). Defendants only cite to a decision from the

14   Southern District of New York, for the proposition that "[b]est correctional practices is a subject

15   to which expert testimony is appropriately given." Dkt. 142 at 7 (citing *Ramsay-Nobles v.*

16   *Keyser*, No. 16 CIV. 5778 (CM), 2019 WL 4383187, at *12 (S.D.N.Y. Aug. 21, 2019)). That

17   case involved the admissibility of a report from an expert with over 49 years of experience in

18   corrections. *See id.* at *12–13. The Court reviewed that decision and finds no support for

19   defendants' position. Accordingly, the Court declines to categorically exclude Mr. Gilbertson's

20   report.

21       The Court also declines to exclude Mr. Gilbertson's opinions referencing the use of a

22   taser. *See* Dkt. 146 at 6 (arguing that Mr. Gilbertson is not qualified to offer an opinion on the

23   use of a taser). It is true that Mr. Gilbertson admitted he is not an expert on the use of a taser and

24

1    has never deployed a taser or been trained in the use of a taser, but a review of his report reveals

2    no improper opinion on the use of the taser. *See generally* Dkt. 143 at 5–15. Mr. Gilbertson only

3    mentions the use of a taser when referencing the use of force as a whole and does not offer an

4    opinion regarding the specific use of the taser. *See* Dkt. 146 at 7, 12. For example, he does not

5    opine that the location of the taser application or the use of stun mode were improper, which may

6    fall outside of his area of expertise. *See Meippen*, 2009 WL 10704687, at *4–5 (excluding use of

7    force expert's opinions regarding the use of a "stun drive" taser because he admitted he was not

8    an expert in the use of tasers).

9                                    **2.   Reliability**

10         Defendants argue that Mr. Gilbertson's opinions are unreliable because they are based

11   upon speculation and conjecture. *See* Dkt. 142 at 7. Specifically, defendants take issue with Mr.

12   Gilbertson's use of the surveillance footage of the incident to form his opinions. *See id.*

13   According to defendants, the poor quality of the video and the lack of sound are insufficient to be

14   able to determine whether plaintiff was calm, compliant, and posed no threat. *See id.*

15         In evaluating reliability, the Court "must assess the expert's reasoning or methodology,

16   using as appropriate criteria such as testability, publication in peer-reviewed literature, known or

17   potential error rate, and general acceptance." *City of Pomona v. SQM North America Corp.*, 750

18   F.3d 1036, 1044 (9th Cir. 2014). However,

19         [t]he test of reliability is flexible and *Daubert's* list of specific factors neither
           necessarily nor exclusively applies to all experts or in every case.[] The list of
20         factors was meant to be helpful, not definitive,[] and the trial court has discretion
           to decide how to test an expert's reliability as well as whether the testimony is
21         reliable,[] based on the particular circumstances of the particular case.

22   *Primiano*, 598 F.3d at 564 (cleaned up).

23

24

1    "A district court may permissibly choose not to examine factors that are not 'reasonable

2    measures of reliability in a particular case.'" *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th

3    Cir. 2017). The Court's function is to "screen the jury from unreliable nonsense opinions, but not

4    exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget*

5    *Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Further, the Court "is not tasked with deciding

6    whether the expert is right or wrong, just whether his testimony has substance such that it would

7    be helpful to a jury." *Id.* at 969–70.

8         Here, defendants' contention that Mr. Gilbertson relied solely on the low-quality video

9    surveillance footage is not supported upon review of the report. *See* Dkt. 143 at 7–8. Although

10   the Court will not endeavor to list everything Mr. Gilbertson relied on, at minimum he relied on

11   (1) his extensive experience as a police officer and work in the field of justice administration, (2)

12   discovery documents, such as deposition testimony, (3) written reports by defendants and a

13   grievance filed by plaintiff, (4) Kitsap County Sheriff's Office Policies, and (5) the surveillance

14   video. *See* Dkt. 143 at 7–14. Further, although the surveillance video is by no means 4K

15   resolution, it is high enough quality to be able to determine plaintiff's body movements as he

16   entered the hallway and before the takedown. *See* Dkt. 148. Thus, it is reasonable for Mr.

17   Gilbertson to conclude that plaintiff was calm before the takedown occurred.

18        The fact that some evidence may be unclear or even contradict Mr. Gilbertson's opinions

19   goes to the weight of the opinions, not their reliability. *See Hartley v. Dillard's, Inc.,* 310 F.3d

20   1054, 1061 (8th Cir. 2002) ("As a general rule, the factual basis of an expert opinion goes to the

21   credibility of the testimony, not the admissibility, and it is up to the opposing party to examine

22   the factual basis for the opinion in cross-examination. Only if the expert's opinion is so

23   fundamentally unsupported that it can offer no assistance to the jury must such testimony be

24

excluded.") (cleaned up). Defendants will have the opportunity to cross-examine Mr. Gilbertson at trial and can attack the basis for his opinions. However, his opinions are not so unreliable that they must be excluded at this point.

Finally, defendants argue that Mr. Gilbertson's opinions will not be helpful to the jury because they can see the video surveillance themselves and come their own conclusion of what happened. *See* Dkt. 142 at 10–11. The Court rejects this argument because it has already determined that Mr. Gilbertson relied on more than the surveillance video to render his opinions. Thus, he is providing more than just his interpretation of a video.

Accordingly, defendants' motion to exclude (Dkt. 142) is denied.

## II.    Motion for Summary Judgment

Defendants move for summary judgment on all of plaintiff's claims. *See* Dkt. 126. Summary judgment is appropriate if a moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a given fact is determined by the required elements of the substantive law under which the claims are brought. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes that do not affect the outcome of the suit under the governing law will not be considered. *Id.*

Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254. Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec.*

1 | *Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The opposing party cannot rest solely on

2 | its pleadings but must produce significant, probative evidence in the form of affidavits, and/or

3 | admissible discovery material that would allow a reasonable jury to find in his favor. *See id.* at

4 | n.11; *Anderson*, 477 U.S. at 249–50. However, weighing of evidence and drawing legitimate

5 | inferences from facts are jury functions, and not the function of the court. *See United Steel*

6 | *Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

7 | ### 1.  Eighth Amendment Claim

8 | Defendants seek summary judgment of plaintiff's Eighth Amendment claim because they

9 | contend there is no evidence of a constitutional violation. *See* Dkt. 126 at 10–15.

10 | To recover pursuant to 42 U.S.C. § 1983, plaintiff must prove that: (l) the conduct

11 | complained of was committed by a person acting under color of state law and that (2) the

12 | conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

13 | of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other*

14 | *grounds, Daniels v. Williams*, 474 U.S. 327 (1986). The Eighth Amendment prohibits the use of

15 | "excessive physical force" against prisoners. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To

16 | establish an Eighth Amendment claim for excessive force, plaintiff must show that "correctional

17 | officers: (1) acted for the very purpose of causing harm; (2) used excessive and

18 | unnecessary force under all of the circumstances; and (3) caused the plaintiff harm." *Reid v.*

19 | *United States*, 825 F. App'x. 442, 445 (9th Cir. 2020). Whether the force was excessive is

20 | determined by five (5) factors: "(1) the extent of injury suffered by an inmate; (2) the need for

21 | application of force; (3) the relationship between that need and the amount of force used; (4) the

22 | threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the

23 | severity of a forceful response." *Bearchild v. Cobban*, 947 F.3d 1130, 1141 (9th Cir. 2020).

24 |

1        Defendants' entire argument is based on their version of events and their conclusion that

2  their use of force was reasonable. *See* Dkt. 126 at 13–15. For example, in defendants' version of

3  events, plaintiff did the following:

> (1) he refused commands to sit down; (2) he repeatedly swore at officers and verbally challenged them; (3) he refused commands to face the wall; (4) he did not allow himself to be restrained in handcuffs and instead actively resisted this effort; (5) when officers applied a control grip, [p]laintiff flexed and clenched his fists and took a hostile stance; (6) when pushed up against a wall, [p]laintiff attempted to pull away from officers, moving toward the door of [the] unit where other inmates were housed; (7) when taken to the ground, [p]laintiff continued to resist and fight; (8) after OC spray was sprayed in [p]laintiff's face, [p]laintiff continued to actively resist attempts to restrain him, laughing and taunting officers as they physically struggled; [and] (9) while on the ground, [p]laintiff attempted to push himself up off the ground and grabbed at the hands of the officers[.]

10  Dkt. 126 at 13–14.

11       In response to defendants' motion for summary judgment, plaintiff submitted a

12  declaration that presents a different version of events. *See* Dkt. 146 at 2. Plaintiff states that,

13  although he was upset that his bible was taken, he did not threaten violence, physically or

14  verbally, towards any corrections officer or any other person. *See id.* at 3. He complied with

15  defendant Ferguson's command to enter the hallway where there were no other prisoners and "a

16  large number of Corrections Officers." *Id.* at 2. After a short period of entering the hallway and

17  discussing the return of his bible, he was given conflicting orders from the corrections officers—

18  one officer told him to sit down while another officer told him to face the wall. *See id.* Before he

19  could react, a corrections officer grabbed his arm and pulled plaintiff towards the officer, which

20  caused plaintiff to "naturally pull[] back against the pull." *Id.* Within seconds "at least five

21  Corrections Officers grabbed [him] and pushed [him] to the ground" and immediately began

22  kicking, punching, and pepper-spraying him. *Id.* While he "was being pushed down and punched

23  and kicked, [his] pants and underwear were pulled down" and defendant Ferguson repeatedly

24

1    applied taser stuns to plaintiff's "bare buttock close to [his] anus." *Id.* Plaintiff states he "was

2    bleeding from where [he] had been shocked and had scarring as a result." *Id.* at 3.

3        In their reply, defendants concede that "[s]hould the Court accept [p]laintiff's declaration,

4    then it is likely [p]laintiff's declaration raises an issue of fact regarding his Eighth Amendment

5    claim sufficient to submit this cause of action to a jury." Dkt. 149 at 4. The Court thus turns to

6    the issue of plaintiff's declaration.

7        Defendants question plaintiff's competency and contend that the Court must inquire

8    whether plaintiff is competent before considering the declaration plaintiff filed in opposition to

9    defendants' motion for summary judgment. *See* Dkt. 149 at 1–4. Defendants raised this issue for

10   the first time in their reply brief, which did not afford plaintiff an opportunity to respond.

11   Nevertheless, the Court disagrees with defendants for two reasons.

12       First, the source of defendants' concerns stems from a state court's order back in March

13   2022, which found plaintiff incompetent to stand trial and ordered that his competency be

14   restored. *See* Dkt. 150 at 22–23. However, plaintiff's declaration is dated October 22, 2021—

15   about five months before the state court's order. *See* Dkt. 146. Thus, defendants have not shown

16   that plaintiff may have been incompetent when he signed the declaration. *See Maxwell v. Roe*,

17   606 F.3d 561, 575 (9th Cir. 2010) ("[C]ompetency can change within a short period of time.");

18   *Miles v. Stainer*, 108 F.3d 1109, 1113 (9th Cir. 1997) (recognizing a change in competency

19   within one month); *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir. 1981) (noting that old

20   psychiatric reports may lose their probative value over time).

21       Second, even if plaintiff was incompetent at the time he signed his declaration, "[a]t the

22   summary judgment stage, we do not focus on the admissibility of the evidence's form. We

23   instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th

24

1   Cir. 2003); *see* Fed. R. Civ. P. 56(c)(2). If the contents of the declaration can be presented in a

2   manner that would be admissible at trial—for example, if plaintiff is competent and testifies at

3   trial—the mere fact that the declaration itself might be excludable provides no basis for refusing

4   to consider it on summary judgment. *Fraser*, 342 F.3d at 1036–37. Thus, the Court will consider

5   plaintiff's declaration.

6          Because the Court accepts the content of plaintiff's declaration, it concludes that triable

7   issues of fact exist and defendants' motion for summary judgment on plaintiff's Eighth

8   Amendment claim should be denied. The Court also notes that, even without plaintiff's

9   declaration, a reasonable juror could conclude that the force used was excessive based on

10  plaintiff's expert's opinion and the surveillance video.

11                          **1.   Fourteenth Amendment Claim**

12         Defendants seek summary judgment of plaintiff's Fourteenth Amendment claim because

13  they say he was not a pretrial detainee at the time of the incident. *See* Dkt. 126 at 15. This is

14  defendants' second attempt to defeat plaintiff's Fourteenth Amendment claim via summary

15  judgment based on the same reason. *See* Dkt. 105 at 6. The Court previously denied defendants'

16  motion without prejudice because "the evidence presented by defendants d[id] not put it beyond

17  dispute that plaintiff was a pretrial detainee at the time of the incident." Dkt. 113 at 7 (report and

18  recommendation); Dkt. 117 (order adopting report and recommendation).

19         According to defendants, on January 19, 2019, plaintiff was being held "post-conviction"

20  after he pled guilty and was sentenced to serve 364 days under Kitsap County Superior Court

21  Cause No. 17-1-01140-0. Dkt. 126 at 2. The problem is that records for that criminal matter

22  show that plaintiff was sentenced on November 8, 2017 and arrested on November 13, 2017—

23

24

1    which is 432 days before January 19, 2019. *See* Dkt. 107 at 5, 20. The records do not account for

2    the gap between the end of the 364-day sentence and the date of the incident.

3    Now, defendants submit a declaration by Keith Hall, a Lieutenant for the Corrections

4    Division of the Kitsap County Sheriff's Office, who states the following: "On January 19, 2019,

5    [plaintiff] was confined to the Kitsap County Correctional Facility serving a 364-day term

6    sentence under Kitsap County Superior Court Cause No. 17-1-01140-0. On that date, he had no

7    other holds in our system." Dkt. 133 at 2. Defendants concede that the evidence they provide

8    does not provide the full picture, but they argue that there is no dispute that he was a convicted

9    prisoner at the time of the incident. *See* Dkt. 149 at 8. The Court disagrees. The evidence

10   defendants submitted does not foreclose the possibility that plaintiff may have been a pretrial

11   detainee. Defendants still fail to offer any evidence that plaintiff's initial 364-day sentence was

12   extended and simply rely on an inference that it must have been extended because the jail records

13   do not show any other hold. It may be that additional days were imposed in connection with

14   plaintiff's conviction, but drawing legitimate inferences from facts are jury functions—not the

15   function of the Court. *See United Steel Workers of Am.*, 865 F.2d at 1542. The Court cannot say

16   that defendants are entitled to summary judgment on these facts.

17   Defendants also make much of the fact that plaintiff has not submitted anything to

18   contradict their evidence. *See* Dkt. 149 at 8. But plaintiff points to the same evidence that

19   defendants rely on. *See* Dkt. 145 at 5 ("[U]sing the documents that [d]efendants provided,

20   [p]laintiff pointed out that the incident occurred 437 days after initial incarceration, even though

21   [plaintiff]'s sentence was only 364 days.") (emphasis in original). Further, as the Honorable

22   Judge Benjamin H. Settle stated in his order adopting this Court's prior recommendation on this

23   issue, "there is no presumption that everyone in custody has been convicted, and it is not part of

24

an in-custody plaintiff's prima facie case, or his ultimate burden of proof . . . to prove that he was not yet convicted when his Fourteenth Amendment rights were violated." Dkt. 117 at 6.

Accordingly, the Court recommends that defendants' motion for summary judgment on plaintiff's Fourteenth Amendment claim be denied.

### 2.  State Law Claims

Defendants seek the dismissal of plaintiff's state law claims for assault and battery. *See* Dkt. 126 at 15. If officers use reasonable force under federal constitutional standards, they are entitled to state law qualified immunity on any assault and battery claims brought under Washington law. *See McKinney v. City of Tukwila*, 103 Wash.App. 391, 409 (2000) (finding officers entitled to state law qualified immunity on assault and battery claims where the use of force was reasonable under § 1983 standards); *Goldsmith v. Snohomish Cnty.*, 558 F.Supp.2d 1140, 1156 n.8 (W.D. Wash. 2008) (same); *see also Anderson v. City of Bainbridge Island*, 472 Fed. Appx. 538, 540 (9th Cir. 2012) (affirming dismissal of state law assault and battery claims where force was not excessive). As such, whether plaintiff's state law claims survive summary judgment depends on the success of his federal law claims. *See* Dkt. 149 (conceding that the "Court's ruling regarding dismissal of [p]laintiff's assault and battery claims should parallel and reflect the Court's ruling regarding [p]laintiff's § 1983 claims"). Because issues of fact remain as to whether the use of force was reasonable, *see supra* section II.1, the Court recommends that defendants' motion for summary judgment on plaintiff's state law claims be denied.

### 3.  Claims Against Defendant Cromwell

Defendants asked the Court to dismiss all of plaintiff's claims against defendant Cromwell because they alleged he had not been served. *See* Dkt. 126. However, defendants

1   withdrew their motion to dismiss after plaintiff filed evidence that defendant Cromwell was

2   served. *See* Dkts. 144, 149 at 12.

3                                            **CONCLUSION**

4          The Court recommends that defendants' motion for summary judgment (Dkt. 126) be

5   denied. The Court denies defendants' motion to exclude the expert opinions of Mr. Gilbertson.

6   Dkt. 142.

7          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

8   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

9   6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

10  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

11  objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

12  *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

13  imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **December 23,**

14  **2022**, as noted in the caption.

15         Dated this 7th day of December, 2022.

16

17                                                    _____
                                                      J. Richard Creatura
18                                                    Chief United States Magistrate Judge

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 16